**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ATD TOOLS, INC., | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 4:21-cv-00108-SRC |
| | ) |
| MICHAEL FISHER, | ) |
| | ) |
| Fisher(s). | ) |

### Memorandum and Order

ATD Tools sells and distributes automotive tools for both its own brand and other sellers. Over two years ago, ATD hired Michael Fisher as its Category Manager, in charge of ATD's branded products. The Tuesday before Thanksgiving 2020, Fisher gave notice that he was resigning but refused to identify his new employer, instead misleading ATD that he would live off his investments while he contemplated his future. As it turns out, Fisher went to work for a direct competitor; and ATD has provided the Court with unrebutted evidence that he both purloined substantial amounts of confidential, trade-secret information that he accessed without authorization and attempted to covered his tracks by deleting troves of digital data.

The Court held a hearing on [8] ATD's Motion for Temporary Restraining Order on February 10, 2021 via Zoom. ATD and Fisher appeared by counsel. Having considered the Verified Complaint, the Motion for Temporary Restraining Order, the affidavits and declarations, the arguments of counsel for the Plaintiff and Defendant, and applicable law, the Court grants ATD's Motion, in part.

I.      **Facts and Background**

Defendant Fisher does not oppose ATD's Verified Complaint through any affidavits, declarations, or other evidence.  For purposes of ATD's Motion for Temporary Restraining Order, the Verified Complaint stands uncontradicted, providing the sole evidence before the Court.  Based on the evidence presented, the Court finds for purposes of this temporary restraining order that:

ATD invested significant time and resources in the development and acquisition of confidential and proprietary information, which ATD keeps confidential and considers proprietary.  ATD's confidential information includes all nonpublic information that relates to its actual or anticipated business and its products, services, research, and development.

Fisher is a former employee of ATD.  ATD originally considered Fisher for employment in January of 2019.  Due to the value and sensitivity of the confidential information, ATD made clear to Fisher that it would not employ him unless he agreed to utilize confidential information only for the benefit of ATD, to not use or disclose the information for any other purpose, to enter into ATD's standard Confidentiality and Non-Solicitation Agreement, and to abide by all of ATD's policies and security protocols.  Fisher agreed to come to work with ATD on these conditions, representing that he would enter into the ATD's standard Confidentiality and Non-Solicitation Agreement and follow ATD's workplace policies.

ATD alleges that Fisher executed its standard Confidentiality and Non-Solicitation Agreement (which includes covenants not to compete) but acknowledges it does not presently have a copy of their agreement.[1]  In reliance on Fisher's promises and agreements to maintain

---

[1] ATD alternatively asserts that if Fisher did not sign the Confidentiality and Non-Solicitation Agreement, it constitutes a breach of contract and that Fisher should be estopped from denying the existence of the agreement. The Court acknowledges ATD's pleading inconsistent theories in the alternative.  Fed. R. Civ. P. 8(d)(2)-(3).  For

the confidentiality of ATD's confidential information, ATD employed Fisher as ATD Category Manager and entrusted him with its knowledge of its business and confidential information.

On Tuesday, November 24, 2020, without any prior notice to ATD, Fisher abruptly resigned his employment with ATD. Fisher's last day with ATD was December 4, 2020. When ATD asked Fisher for the name of his next employer, Fisher stated that he was leaving for personal reasons, had no new employment, and would be living off investments while contemplating his next steps. Further, when his colleagues at ATD asked Fisher what company he would be joining, he similarly represented that he had no new employment opportunity.

On December 16, 2020, ATD reminded Fisher in writing of his obligations regarding nonuse and nondisclosure of confidential information, and of his obligation to return and destroy all confidential information. Upon receiving that notice, Fisher did not acknowledge possession of any confidential information and did not return any confidential information to ATD.

ATD then reviewed Fisher's ATD email account, discovering that Fisher had deleted and destroyed almost all emails in his account from the two years prior to his departure, both "Sent" emails and "Received Emails," and all attachments to such emails. Fisher had destroyed hundreds of company emails, documents, and information, if not more. To date, ATD has only been able to recover emails from a few isolated periods of time. The majority of the information in the emails is no longer available to ATD due to Fisher's actions.

ATD investigated what other actions Fisher had taken with respect to ATD's computer systems and files prior to his departure. ATD discovered that Fisher had accessed, copied, and utilized extensive data on ATD's computer systems. Fisher transferred ATD's information and documents to his own storage devices or accounts. Some of the information Fisher accessed and

purposes of the present motion, the Court need not resolve the issues surrounding the Confidentiality and Non-Solicitation Agreement.

copied included information outside the scope of Fisher's job duties with ATD, which he was not authorized to access or use.  This information included:

1) Compensation and bonus information for key ATD employees;

2) Job descriptions and information regarding current and former employees;

3) Internal financial information, bank reconciliations, and check payee information identifying ATD's sources, suppliers, and other business partners, and amounts paid to them;

4) Lists of ATD's expenses, including reports of expense reimbursement requests of employees and representatives reflecting strategic decisions and approaches;

5) Information regarding the categorizations used by ATD in analyzing sales, products, and customer response, and in determining how to categorize products for sales enhancement purposes;

6) Records, summaries, and details of ideas for potential marketing plans for prior and current ATD products;

7) Strategic marketing plans of ATD containing strategies, sales objectives, new market identifications, possible new products, possible promotions, and the identification of market competition and threats to success on the product and company levels;

8) information from the internal file folder established on the internal ATD network by a former president of ATD for such president's use and for use by his successors, including the president of ATD during Fisher's time with ATD, which includes highly confidential and wide-ranging information about ATD's operations.

After his departure from ATD, Fisher began working at Integrated Supply Network, a competitor of ATD throughout the country.[2] ATD alleges that Fisher will continue to work for Integrated Supply Network or with other competitors of ATD and will use the improperly acquired information for the benefit of ATD's competitors, unless restrained.

After filing this present action, ATD notified Fisher that it had discovered how he had destroyed emails and accessed and copied ATD's confidential and trade secret information. ATD included a copy of the Verified Complaint, which sets out the above actions in detail. Despite these notifications, Fisher did not return any of ATD's confidential information, and further did not communicate with ATD.

## II. Discussion

In determining whether to issue a TRO, the Court must consider:  (1) the threat of irreparable harm; (2) the balance between this harm and the injury that granting the injunction will inflict; (3) the probability of the movant's success on the merits; and (4) the public interest. *Dataphase Sys., Inc., v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  No one factor is dispositive; the Court must consider all factors together.  *Id.*  "While no single factor is determinative, the probability of success factor is the most significant."  *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citations and internal quotations omitted).  The relevant inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  *Dataphase*, 640 F.2d at 113.  The party requesting injunctive relief bears the "complete burden" of proving the

---

[2] At the TRO hearing, Fisher's counsel stated that he did not know the name of Fisher's present employer but indicated that it may be a competitor of ATD.  Since the hearing, Fisher's counsel has confirmed that Fisher works for Integrated Supply Network, which Fisher does not dispute is a competitor of ATD.

5

necessity of injunctive relief.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

      A.      **Irreparable harm**

"[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc., v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (quoting *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996)).  A party will experience irreparable harm if it has "no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages."  *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).

Fisher began working for Integrated Supply Network, ATD's competitor, after accessing and downloading significant amounts of ATD's confidential information from ATD's computer systems.  Some of the information Fisher accessed contains trade secrets intrinsic to ATD's business model, which are not otherwise publicly available.  ATD's trade secrets include its business strategies, such as the details on pricing arrangements with ATD's vendors and ATD's process and decisions regarding which products will receive their private brand label, as well as other strategic plans.  Courts generally hold that the disclosure of trade secrets like business strategies will result in irreparable harm to the plaintiff, particularly as here when the defendant surreptitiously takes information and attempts to cover up his actions; and the Court agrees that Fisher's current employment with Integrated Supply Network creates an imminent threat of disclosure.  *See, e.g., Enter. Fleet Mgmt., Inc. v. Guinn*, 2018 WL 7958815, at *3 (E.D. Mo. 2018); *Panera, LLC v. Nettles*, 2016 WL 4124114, at *4 (E.D. Mo. 2016); *Experitec, Inc. v. Stachowski*, 2014 WL 11089362, at *3 (E.D. Mo. 2014); *TLC Vision (USA) Corp. v. Freeman*,

2012 WL 5398671, at *5 (E.D. Mo. 2012).  The Court finds that, absent an injunction against Fisher's disclosure of trade secrets, ATD may suffer irreparable harm.

**B.      Balance of harms**

Fisher presents no evidence of potential harm arising from a temporary restraining order against the use or disclosure of ATD's confidential information.  Fisher understandably resists enforcement of the noncompete provision in ATD's Confidentiality and Non-Solicitation Agreement, but he makes no argument as to why the Court should not enjoin the use or disclosure of ATD's confidential information.  Thus, the harm that ATD would suffer, absent an injunction, outweighs the negligible harm to Fisher if the Court enjoins him from using or disclosing ATD's information.

**C.      Probability of success on the merits**

Based on the unrefuted evidence presented, the Court is satisfied that ATD is likely to succeed on the merits of several of its claims against Fisher, including its request for injunctive relief to protect the disclosure of its confidential information and trade secrets.  ATD is likely to succeed on the merits with respect to its claims under the Defend Trade Secrets Act, 18 U.S.C.A. § 1836, Missouri Computer Tampering Act, Mo. Ann. Stat. § 569.095, and the common law duty-of-loyalty.  *See Express Scripts, Inc. v. Lavin*, 2017 WL 2903205, at *6–7 (E.D. Mo. 2017) (granting a TRO on breach of contract and [Defend Trade Secrets Act] claims, with respect to confidential customer and marketing information threatened to be used by the plaintiff's former sales director in substantially similar work for the plaintiff's competitor); *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012) (affirming judgment against employee under the Missouri Computer Tampering Act for destroying data on her employer's computer system and retaining her employer's confidential information); *Scanwell Freight Express STL, Inc. v. Chan*,

162 S.W.3d 477, 480 (Mo. 2005) (an employee's misuse of confidential information peculiar to the employer's business constitutes a breach of the duty of loyalty).

To establish a violation of the Defend Trade Secrets Act, a plaintiff must show that the defendant misappropriated its trade secrets: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection." 18 U.S.C. § 1836(b)(1). The statute defines trade secrets to include "all forms and types of financial, business, scientific, technical, economic, or engineering information," as long as the owner took reasonable measures to keep the information secret and the information "derives independent economic value, actual or potential, from not being generally known" by competitors. 18 U.S.C. § 1839(3). Misappropriation means acquisition of a trade secret through improper means such as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage." 18 U.S.C. § 1839(5)-(6). Here, ATD took reasonable measures to keep its information confidential and much of its business strategies and details on vendor relationships derive value from their secrecy. Fisher acquired ATD's trade secrets while under a duty to maintain its secrecy, which meets the statutory definition of "misappropriation." *Id.* Based on this record, the Court finds that ATD has a reasonable likelihood of success on the merits of its Defend Trade Secrets Act claim.

To establish a violation of the Missouri Computer Tampering Act, a plaintiff must demonstrate that the defendant "knowingly and without authorization or without reasonable grounds to believe that he [or she] has such authorization:

> Modifies or destroys data or programs [on] . . . a computer, computer system, or computer network . . . Discloses or takes data, programs, or supporting documentation [on] . . . a computer, computer system, or computer network . . . or Receives, retains, uses, or discloses any data he [or she] knows or believes was obtained in violation of this subsection.

8

Mo. Rev. Stat. § 569.095.  During his employment with ATD, Fisher deleted data from ATD's computer system and copied ATD's confidential information to an external electronic storage device.  Thus, the Court finds that ATD has a reasonable likelihood of success on the merits of its Missouri Computer Tampering Act claim.

For ATD's duty-of-loyalty claim, "a breach arises when the employee goes beyond the mere planning and preparation [for competition] and actually engages in direct competition, which by definition, is to gain advantage over a competitor."  *Scanwell*, 162 S.W.3d at 479. "Activities that constitute a breach of the duty of loyalty in this respect include using confidential information peculiar to the employer's business, soliciting customers before the end of the employment or other acts that result in direct competition."  *Western Blue Print Co., LLC*, 367 S.W.3d at 17 (citation omitted).  Based on the evidence presented, Fisher not only deleted data from ATD's computer system but took confidential information with him when he left his employment at ATD to work for Integrated Supply Network.  ATD has a reasonable likelihood of success on its duty of loyalty claim as well.

The Court is not convinced, at this stage, that ATD's success on the merits on the DTSA, Missouri Computer Tampering Act, and duty-of-loyalty claims warrants the entirety of the relief requested in its motion.  For example, ATD does not show that Fisher signed its Confidentiality and Non-Solicitation Agreement, as it cannot locate a copy of the agreement signed by Fisher. At this early stage of the case, the Court need not, and does not, determine whether ATD can establish a valid, enforceable agreement with Fisher.  And rather than enjoining Fisher from working for Integrated Supply Network, ATD can adequately protect its trade secrets by temporarily restraining Fisher from using or disclosing any of ATD's confidential information.

9

### D. Public interest

Here, the balance of the equities also favors granting ATD's motion for a temporary restraining order. Enjoining Fisher from using or disclosing ATD's trade secrets will not harm the public, rather, it will preserve the public's interest in a fair and competitive business market. Conversely, denying injunctive relief will undermine the enforcement of important statutes, including the Defend Trade Secrets Act and the Missouri Computer Tampering Act.

### III. Conclusion

The Court finds that a limited Temporary Restraining Order adequately preserves the status quo between the parties until the Court can hold an evidentiary hearing on the merits of ATD's claims. ATD does not have an adequate remedy at law for its claims against Fisher, as the disclosure of its confidential information, including trade secrets, would cause irreparable harm. Accordingly, the Court grants [8] ATD's motion for a Temporary Restraining Order. The Court will file a separate Temporary Restraining Order enjoining Fisher from using or disclosing to third parties any of ATD's confidential information in his custody or control.

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the Court orders that ATD must provide a surety bond to the Court in the amount of $10,000.00, which ATD must deposit with the Court under Local Rule 13.04(A) as security for the payment of such costs and damages (if any) as Fisher may incur if the Court later finds that he was wrongfully enjoined or restrained. In determining this amount, the Court considered Fisher's weekly compensation at Integrated Supply Network, which counsel provided to the Court, and the anticipated length of time the Court will need to hear and decide [20] ATD's pending Motion for a Preliminary Injunction.

The Court provisionally sets ATD's' Motion for a Preliminary Injunction for hearing on March 23, 2021 at 1:00 p.m. via Zoom.  The Court will consider holding a combined preliminary and permanent injunction hearing and therefore orders the parties to submit, no later than February 16, 2021, a proposed joint scheduling plan for disclosure and proposed dates for a combined preliminary and permanent injunction hearing.

Dated this 12th day of February, 2021.

Hour of issuance: 1:00 P.M.

*SL R. CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**